MARY A. ROBINSON, Appellant, v. THOMAS C. ROBINSON, Respondent.

### Kansas City Court of Appeals, February 24, 1896.

Divorce: CONFLICTING EVIDENCE OF PARTIES: CHILDREN: APPELLATE PRACTICE. In a divorce case, where the evidence of plaintiff and defendant is contradictory from beginning to end and without corroboration, and the scale is sought to be turned by the introduction of their young children, who appear from the record to have been subject to threats and inducements by each side, the appellate court will defer to the trial court and affirm its judgment.

*Appeal from the Bates Circuit Court.*—HON. JAMES H. LAY, Judge.

AFFIRMED.

*Thomas J. Smith* and *Francisco Bros.* for appellant.

(1) Plaintiff is not under the law required to show that her life and conduct as the wife of defendant had been wholly free from blame in order that she might be divorced from her husband for any of the grounds

specified in the petition if proven, but it is enough if the evidence fails to show that she has been guilty of anything charged in the cross bill against her, which, if true, would be grounds upon which defendant might be divorced. *Hoffman v. Hoffman*, 42 Mo. 547; *Owen v. Owen*, 48 Mo. App. 208. (2) In a divorce suit the appellate court weighs the evidence as in a suit in equity, and upon the whole evidence determines the rights of the parties. (3) Under the whole evidence, the plaintiff should be granted the relief asked in her petition.

*Graves & Clark* for respondent.

(1) Where the evidence in divorce cases is conflicting and the decision of the court that tries the cause depends upon the credit to be given to the witnesses, an appellate court will not interfere with the judgment. *Stephenson v. Stephenson*, 29 Mo. 95; *Gillespie v. Gillespie*, 28 Mo. 598; *Owen v. Owen*, 48 Mo. App. 208–212; *King v. King*, 42 Mo. App. 454; *Nichols v. Nichols*, 39 Mo. App. 291; *Miller v. Miller*, 14 Mo. App. 422; *Rawlings v. Rawlings*, 102 Mo. 563–567; *Griesdeick v. Griesdeick*, 56 Mo. App. 94. (2) In cases of this kind a finding upon conflicting evidence will not be disturbed upon appeal. This is the rule in this state and elsewhere. *Bucki v. Bucki*, 85 Hun (N. Y), 619. (3) While in this case and other equity cases the appellate court will review the evidence, yet it will defer very largely to the opinion of the trial court because of the superior advantages which that court possesses of gleaning from the demeanor of the witnesses the truthfulness of the story told. *Mathias v. O'Neil*, 94 Mo. 523–530; *Drostin v. Mueller*, 103 Mo. 624–634; *Parker v. Roberts*, 116 Mo. 656–667.

SMITH, P. J.—This is an action of divorce. The grounds of divorce alleged in the petition were, in substance, that defendant was a man of violent temper and accustomed to the use of abusive language to plaintiff, calling her a "God-damned devil; a God-damned bitch; a liar;" that defendant had struck plaintiff with a whip; choked her and abused their children; that he had charged her with having committed the crime of adultery; and that he had failed to properly provide for her, in consequence of which she was forced to leave him.

The plaintiff, at the trial, was introduced as a witness in her own behalf and testified to the commission of each of the several grievances alleged in her petition. She established by her testimony a *prima facie* right to a decree in her favor.

The defendant was introduced as a witness in his behalf and in his testimony contradicted that of the plaintiff from beginning to end. His testimony disproved every fact which that of the plaintiff had proved. The testimony of the one, in favor of the affirmative of the issues, was offset by that of the other in favor of the negative. There is little in the testimony of the other witnesses that in any way corroborates that of either the plaintiff or defendant.

Looking through the evidence presented by the record, it is found that the testimony of the one is about as well corroborated as that of the other. Each of them realizing this anomalous condition of their case, sought to turn the scale by the introduction of the testimony of their two infant children, Maud and Glenn, aged, respectively, ten and thirteen years. The testimony of these children witnesses tended to support that of the mother. They each testified to facts and circumstances that had transpired many years before

they gave their testimony and when they were very young. They displayed that bias and sympathy for their mother, from whom they had been separated for several months, that was natural for children of their years. They were before the trial judge, who had them in his presence and who was afforded an opportunity to hear their testimony and to observe the circumstances and conditions that surrounded them at the time. He was in a position to fairly judge whether they had been subjected, in giving their testimony, to any undue or improper influence, by either their father or mother.

There is much in the case on which to base the suspicion that these children had been more or less influenced in their testimony by threats and inducements of the father and the importunities of the mother. Their position, young as they were, in this unnatural and unseemly contest between their parents, was that of the greatest embarrassment, mortification, and shame. They should have been spared by their inconsiderate parents from undergoing the trying and painful ordeal to which they were so mercilessly subjected. No wonder the trial judge, who heard the case, gave little or no heed to their testimony. He was, under the circumstances just referred to, better qualified than it is possible for us to be, to determine just what weight, if any, should be given to the testimony of these children. If their testimony is rejected, there is little or none left, except that of the plaintiff herself, tending to prove the existence of any of the alleged grounds of divorce.

We can not say, from all the evidence, that the defendant is less truthful than the plaintiff; nor do the many phases of the characters of both plaintiff and defendant, as reflected by the evidence, convince us of the spotless purity of either; nor does such evidence

convince us that either party has faithfully performed all the duties enjoined upon them by law in consequence of the marriage status. A protracted review and consideration of the evidence would subserve no useful purpose. To reconcile and harmonize the various conflicts in the testimony, relating to the issues of fact, would be to undertake a task not to be accomplished.

The conclusion of the trial judge who heard and weighed all the testimony, was that neither was an innocent and injured party and so dismissed the petition and the cross-petition, and we feel constrained by our convictions of duty, to defer to his conclusion, and as a result of this to affirm the judgment.    All concur.